IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| MICHAEL SPITKO and VIRGINIA SPITKO,<br><br>        Plaintiffs,<br><br>    v.<br><br>HARRAH'S ATLANTIC CITY OPERATING COMPANY LLC D/B/A HARRAH'S RESORT ATLANTIC CITY,<br><br>        Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 16-0489 (JBS-KMW)<br><br>**OPINION** |
|---|---|

APPEARANCES:

Matthew S. Breslin, Esq.
David Brian Rodden, Esq.
Patrick J. Rodden, Esq.
RODDEN & RODDEN
125 North 20th Street
Philadelphia, Pa 19103
    Attorneys for Plaintiffs

Matthew S. Breslin, Esq.
Justin A. Britton, Esq.
Russell L. Lichtenstein, Esq.
COOPER LEVENSON, P.A.
1125 Atlantic Avenue – Third Floor
Atlantic City, NJ 08401
    Attorneys for Defendant

**SIMANDLE,** District Judge:

I.    INTRODUCTION

    Plaintiff Michael Spitko (hereinafter "Mr. Spitko") and his wife, Plaintiff Virginia Spitko (hereinafter "Mrs. Spitko"),

brought this action alleging that Mr. Spitko slipped and fell on a greasy substance as a result of the negligence of Defendant, Harrah's Atlantic City Operating Company, LLC (hereinafter "Defendant"). Defendant moves for summary judgment. [Docket Item 47.] For the reasons stated herein, the Court will deny Defendant's motion for summary judgment.

## II. BACKGROUND[1]

### A. Facts

On August 3, 2014, Plaintiffs ate dinner at the Waterfront Buffet (hereinafter "Buffet" or "the Buffet") located within

---

[1] For purposes of the instant motion and pursuant to Local Civil Rule 56.1, the Court looks to Plaintiffs' Amended Complaint [Docket Item 44] when appropriate, Defendant's Statement of Undisputed Material Facts [Docket Item 47-1], Defendant's Motion for Summary Judgment [Docket Item 47-2.], Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment [Docket Item 48], Plaintiffs' "Additional Facts" [Docket Items 48-12], Defendant's Response to Plaintiffs' Opposition and "Additional Facts" [Docket Item 49], and related exhibits and documents.

Defendant argues that Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment [Docket Item 48] and Plaintiffs' "Additional Facts" [Docket Item 48-12] fail to comply with L. Civ. R. 56.1(a). However, Plaintiffs' Opposition is "a responsive statement of material facts, addressing each paragraph of the movant's statement" that indicates agreement or disagreement, states material facts in dispute, and cites to affidavits and other documents in connection with the motion. See L. Civ. R. 56.1. In addition, Rule 56.1 states "opponents may also furnish a supplemental statement of disputed material facts." Id. In compliance with the Rule, Plaintiffs provided "Additional Facts" in separately numbered paragraphs. Although, on occasion Plaintiffs could have cited more specifically, the Court does not find that Plaintiffs' Opposition or "Additional Facts" violated L. Civ. R. 56.1.

Harrah's Resort in Atlantic City, New Jersey and operated by Defendant. [Docket Items 47-1, ¶ 1; 48, ¶ 1.] The Buffet is an all-you-can-eat establishment featuring over a hundred food and beverage items. [Docket Item 47-3, 821.] As Plaintiffs exited the Buffet, through a tiled walkway between the food service station and seating area [Docket Item 48, ¶¶ 17-18], Mr. Spitko slipped, fell, and landed on his rear end. [Docket Items 47-1, ¶ 7; 48, ¶¶ 7-10.]

Prior to falling, Mr. Spitko did not notice any substance on the floor. [Docket Items 47-1, ¶ 9; 48, ¶¶ 7-10.] However, after the fall, he identified a "greasy, dirty spot and a mark in it" on the floor. [Docket Items 47-1, ¶ 10; 48, ¶¶ 7-10.] Neither party provided evidence to suggest how long this substance was on the tile. [Docket Items 47-1, ¶ 12; 48, ¶¶ 11-12.] Defendant produced a "Harrah's Incident File Full Report" which indicates that Mr. Spitko fell, injured his left elbow, and received first aid. [Docket Items 49-2, ¶¶ 16-19; 48-12, ¶¶ 16-19.] Both parties agree that Defendant's Security Specialist took photographs of the accident location [Docket Items 48-12, ¶ 23; 49-2, ¶ 20]; however, Plaintiffs allege that Defendant's "Environmental Service" (EVS) employee mopped the tile before Defendant's Specialist took the photographs. [Docket Item 48-13, 28.]

Additionally, Plaintiffs allege that Defendant's one-hour surveillance video, capturing before, during, and after the fall,

3

shows only one EVS employee monitoring the Buffet floor. [Docket Item 48-13]. However, Defendant claims that it typically assigns two EVS employees and a Buffet employee known as a "line wiper" to monitor and clean the Buffet during the dinner shift. [Docket Item 47-2, 25-26.] Defendant contends that it followed this alleged practice the night of Mr. Spitko's fall. [Id.]

Mr. Spitko alleges that he suffered multiple injuries, specifically to his knees and back, underwent a knee replacement, and regularly receives lower back injections due to the fall. [Docket Item 44, ¶ 33.]

### B. Procedural History

Plaintiffs filed a complaint on January 28, 2016 [Docket Item 1] and subsequently filed an amended complaint on June 29, 2018. [Docket Item 44.] Mr. Spitko claims one count of negligence and Mrs. Spitko claims loss of consortium. [Id.] Defendant filed a motion for summary judgment, which is now pending before the Court. [Docket Item 47-2.] Plaintiff filed a Response in Opposition [Docket Item 48] and Defendant filed a Reply. [Docket Item 49.] The Court heard oral argument on March 11, 2019.

### III. STANDARD OF REVIEW

At summary judgment, the moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); accord Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In reviewing a motion for summary judgment, the court is required to examine the evidence in the light most favorable to the non-moving party, here the Plaintiffs, and extend all reasonable inferences in that party's favor. Scott v. Harris, 550 U.S. 372, 378 (2007); Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014). Credibility determinations are not appropriate for the court to make at the summary judgment stage. Davis v. Portlines Transportes Maritime Internacional, 16 F.3d 532, 536 n.3 (3d Cir. 1994).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The non-moving party "need not match, item for item, each piece of evidence proffered by the movant," but must simply present more than a "mere scintilla" of evidence on which a jury could reasonably find for the non-moving party. Boyle v. Cty. of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Anderson, 477 U.S. at 252).

## IV. DISCUSSION

### A. Plaintiffs' Expert: Charles Penza

Defendant asserts that Plaintiffs' expert, Charles Penza, is not "qualified to offer expert testimony under either Daubert or FED. R. EVID. 702." [Docket Item 49, 5; Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).] Although Defendant did not file a formal motion to strike Mr. Penza's opinions or testimony, Plaintiffs and Defendant both briefed and argued the issue and therefore the Court will address the objection to Mr. Penza's expert opinion.

Mr. Penza's testimony is subject to the Federal Rules of Evidence, which mandate that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Expert opinions may be based on

> facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury

6

>     evaluate the opinion substantially outweighs their
>     prejudicial effect.

FED. R. EVID. 703.

These Rules create "a trilogy of restrictions on expert testimony: qualification, reliability, and fit." Schneider ex. rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003) (citation omitted). Qualification refers to the requirement that the witness possess specialized expertise. The Third Circuit has "interpreted the specialized knowledge requirement liberally, and ha[s] stated that this policy of liberal admissibility of expert testimony extends to the substantive as well as the formal qualification of experts." Waldorf v. Shuta, 142 F.3d 601, 625 (3d Cir. 1998) (citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994)).

Reliability requires that the expert's testimony is based on the "methods and procedures of science" rather than on "subjective belief or unsupported speculation," and that the "[p]roposed testimony must be supported by appropriate validation . . . ." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 590 (1993). Daubert announced a non-exhaustive list of factors that bear on the inquiry of reliability: (1) whether the theory or technique can be and has been tested, (2) whether the theory or technique has been subjected to peer review, (3) the known or

potential rate of error and the existence of and maintenance of standards controlling the technique's operation, and (4) general acceptance of the practice. Oddi v. Ford Motor Co., 234 F.3d 136, 144-45 (3d Cir. 2000)(quoting Daubert, 509 U.S. at 593-97). "[A]ny step that renders the analysis unreliable under the Daubert factors renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 745 (3d Cir. 1994). However, reliability does not require correctness. Id. at 744. Rather, the party need only demonstrate "by a preponderance of the evidence" that the expert's opinion bears adequate indicia of reliability, not that it is objectively "true." Krys v. Aaron, 112 F. Supp. 3d 181, 190 (D.N.J. 2015).

The fit requirement "goes primarily to relevance" by "requir[ing] a valid scientific connection to the pertinent inquiry as a precondition to admissibility." Daubert, 509 U.S. at 591-92. "In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." Schneider, 320 F.3d at 404 (citations omitted).

1. Qualifications of Mr. Penza

Defendant argues that Mr. Penza is not qualified to offer expert testimony in this instance because he has never been involved in or worked in the food services industry. [Docket Item

8

47-2, 10.] Additionally, Defendant asserts that Mr. Penza has never provided safety or operational advice to a self-service buffet or visited any other self-service buffet in Atlantic City. [Id.]

However, an expert's qualifications should be assessed "liberally," recognizing that "a broad range of knowledge, skills, and training qualify an expert as such." In re Paoli, 35 F.3d at 741. Although Mr. Penza never worked specifically in the food service industry, he has over fifty years of experience as a safety engineer. [Docket Items 48-13, 26; 47-7, 84.] He designed and supervised the construction of offices, laboratories, and food processing, chemical, pharmaceutical, and industrial manufacturing plants. [Docket Item 47-7, 84.] Additionally, he performed home and commercial building inspections and has prepared expert reports regarding building failures, accident investigations, and safety code compliance. [Id.] Therefore, for purposes of this motion, the Court finds that Mr. Penza's safety-engineering experience qualifies him as an expert in this instance.

2. Reliability and fit of Mr. Penza's Opinions

The reliability test does not ask "whether a particular . . . opinion has the best foundation or whether it is demonstrably correct. Rather, the test is whether the particular opinion is based on valid reasoning and reliable methodology." Oddi v. Ford Motor Co., 234 F.3d 136, 145-46 (3d Cir. 2000). Defendant argues that Mr. Penza's testimony and opinions are "based solely on his

own speculation . . . and subjective standard for which he has not provided any supporting documentation." [Docket Item 47-2, 12.] However, in his expert report, Mr. Penza cited to ASTM Standards Section 4.4 entitled "Mats and Runners" to support his opinion that it is "good practice" in the restaurant industry to place floor mats in locations prone to spills. [Docket Item 47-7, 67.] By applying the standard to this case, Mr. Penza concluded that Defendant's failure to provide floor mats at and near the self-service buffet was inconsistent with the ASTM Standard. [Id.] This opinion is relevant to Plaintiffs' claim that Defendant's negligence caused Mr. Spitko's fall. Therefore, for purposes of this motion, the Court will consider Mr. Penza's opinion regarding floor mats admissible.

Although Mr. Penza cited ASTM Standards to support his opinion regarding the use of floor mats, he failed to provide any scientific justification or established methodology to support his assertion that Defendant failed to provide adequate inspection and supervision of the Buffet floor. [Docket Item 47-7, 22.] After reviewing the surveillance video, Mr. Penza concluded that the Buffet was "undermanned" and that the of lack of sufficient EVS personnel violated industry standards and contributed to Mr. Spitko's fall. [Docket Item 48-13, 30.] Mr. Penza asserts that the Buffet must have at least two employees performing fifteen minute

"sweep" inspections of the Buffet floor to comply with industry standards. [Docket Item 47-7, 69.]

However, Mr. Penza did not offer any scientific, technical, or specialized knowledge to support his opinion that the "fifteen–minute sweep rule" is an industry standard. [Id.] He also failed to set forth any evidence regarding whether the "fifteen-minute sweep rule" has been tested or subject to peer review, the existence of standards controlling this rule, or a general acceptance of this rule. See Daubert, 509 U.S. at 593-97. Rather, Mr. Penza only stated, "experience has determined that sweep logs . . . should be kept" and "many court decisions resulted from a 15 minute notice rule" without providing these alleged cases. [Docket Item 48-10, 20-21.] These statements are insufficient to satisfy the reliability requirement of FED. R. EVID. 702 and Daubert.

Therefore, the Court will not determine the admissibility of Mr. Penza's opinion regarding the industry standard for sweeps. However, Plaintiffs' counsel conceded that if Defendant followed its own established policies and procedures, then it would have complied with the industry standard. For purposes of this motion, the Court will assume that Defendant's policies and procedures comply with the industry standard. Therefore, the relevant question that determines this motion is whether Plaintiffs have adduced evidence from which a reasonable fact finder could find

that Defendant failed to follow its policies and procedures when the incident took place.

   **B. Negligence**

   This Court has diversity jurisdiction under 28 U.S.C § 1332, and New Jersey law provides the rule of decision. In a negligence action under New Jersey law, a plaintiff must establish "(1) that the defendant owed a duty of care; (2) that the defendant breached that duty; (3) actual and proximate causation; and (4) damages." Fernandes v. DAR Development Corp., 119 A.3d 878, 885-86 (N.J. 2015). In this case, as a commercial premises owner, Defendant owed Mr. Spitko, a business invitee, a duty to "guard against any dangerous conditions on the property that the owner either knows about or should have discovered, and to conduct a reasonable inspection to discover latent dangerous conditions." Stelluti v. Casapenn Enters., LLC, 1 A.3d 678, 691 (N.J. 2010) (citing Hopkins v. Fox & Lazo Realtors, 625 A.2d 1110 (N.J. 1993))(internal citations and punctuation omitted). In addressing the issue of breach, an injured plaintiff asserting a business owner's breach of duty of care must prove, "as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident." Nisivoccia v. Glass Gardens, Inc., 818 A.2d 314, 316 (N.J. 2003). Constructive knowledge may be attributed where a plaintiff establishes that the defendant "had the reasonable

opportunity to discover and correct the defect." <u>Prioleau v. Kentucky Fried Chicken, Inc.</u>, 85 A.3d 1015, 1022 (N.J. Super. Ct. App. Div. 2014).

However, under New Jersey's mode-of-operation rule, a plaintiff is entitled to a rebuttable presumption of negligence, without the burden of proving the premises owner's actual or constructive notice of a hazardous condition, "when a substantial risk of injury is inherent in a business operator's method of doing business." <u>Nisivoccia</u>, 818 A.2d at 317. That rule applies only "to settings such as self-service or a similar component of the defendant's business, in which it is reasonably foreseeable that customers will interact directly with products or services, unassisted by the defendant or its employees." <u>Prioleau v. Kentucky Fried Chicken, Inc.</u>, 122 A.3d 328, 330 (N.J. 2015). Although the rule applies only to sections of a store that are affected by self–service operations, it is not limited to the produce aisle of supermarkets or other traditional self-service areas. <u>Id.</u> at 338; <u>see also</u> <u>Ryder v. Ocean Cty. Mall</u>, 774 A.2d 700, 702-704 (N.J. Super. Ct. App. Div. 2001)(applying the rule to customer accidents in areas in which patrons carried food and drinks). If the rule applies, the burden shifts to the defendant, who must prove it exercised due care. <u>Prioleau</u>, 122 A.3d at 338. Absent an explanation by the defendant free from factual dispute, the issue

13

of due care is determined by the finder of fact. Bozza v. Vornado, Inc., 200 A.2d 777, 779 (N.J. 1964).

In this case, the Buffet where the incident took place is a self-service establishment, allowing patrons to select and carry food and beverages from the many service bars to the patrons' seats. [Docket Item 48-13, 3.] This is a busy self-service buffet serving about 700,000 patrons per year. [Docket Items 48-13, 37; 49, 14.] The accident occurred in a walkway in proximity of the buffet bar over which patrons customarily carried their buffet food. [Docket Item 48-13, 3.] Therefore, the Court finds that the mode-of-operations rule applies easily in this instance.

Although Defendant concedes that the mode-of-operations rule may apply, Defendant argues it exercised due care, and therefore defeated the inference of negligence, by employing reasonable policies, procedures, and practices for the inspection and maintenance of the Buffet. [Docket Item 47-2, 24.] Defendant asserts that all Buffet employees must monitor and report any spills on the floor. [Docket Item 47-1, ¶ 23.] More specifically, Defendant claims that it typically assigns two EVS employees and a restaurant employee known as a "line wiper" to monitor the Buffet during the dinner shift. [Docket Item 47-2, 25.] EVS employees must inspect and clean the Buffet's food lines, dining room, walkways, and bathrooms. [Id. at 22:11-18.] The line wiper's duties include walking around the Buffet and navigating through the Buffet

line to ensure the cleanliness of the area. [Rello Dep. 27:7-9.] Additionally, the Buffet manager's duties include ensuring that the Buffet floor is clean at all times. [Docket Item 47-1, ¶¶ 21-22.]

Defendant asserts that on the night of the incident, it complied with its policies and procedures, and therefore exercised due care that defeats the mode-of-operations inference of negligence. Defendant argues that it assigned two EVS employees, Rupert Mills and Oscar Flores, to monitor and clean the Buffet floor the night of the incident. [Docket Item 47-2, 31.] Defendant contends that Plaintiffs' expert Mr. Penza conceded that it was "probably true" that he could not identify any fifteen-minute interval in the half hour leading up to Mr. Spitko's fall in which Rupert Mills was not walking through the Buffet area. [Docket Item 47-2, 31.] Additionally, Defendant refers to its employee time sheet, which indicates that Defendant assigned Oscar Flores to monitor the Buffet; the sheet, however, does not indicate that Rupert Mills was also assigned to the Buffet area. [Docket Item 47-9, 107.] Finally, Defendant claims that according to the Buffet manager, the Buffet employs a "line wiper" who, on night shifts, walks through the buffet line to ensure cleanliness of the area. [Docket Item 47-2, 24.] However, Defendant failed to offer evidence that the Buffet employed a line wiper the night of the incident.

Plaintiffs argue that Defendant failed to prove it exercised due care because the alleged precautionary and maintenance activities Defendant claims were not actually provided the night of Mr. Spitko's fall. [Docket Item 48, ¶¶ 19-33.] Plaintiffs assert that the one-hour long surveillance video before, during, and after the incident revealed only one EVS employee, Rupert Mills, circulating the Buffet. [Docket Item 48-13, 29.] Mr. Penza did not see the other EVS employee, Oscar Flores, conduct any sweeps of the area and the employee appeared only at the end of the surveillance video. Therefore, there is evidence from which a reasonable jury could find that Defendant did not comply with its standard policies and procedures the night of the incident because only one EVS employee performed sweeps of the Buffet area.

Additionally, Plaintiffs state that the Buffet only utilized precautionary floor mats along the taco and seafood stations. [Docket Items 48, ¶ 61; 49-2, ¶ 61.] Plaintiffs' safety engineering expert, Charles Penza, concluded that the Buffet's lack of floor mats and the inadequate supervision of the floor violated safety procedures and created a slipping hazard. [Docket Item 48, 17.]

There are genuine issues of material fact about whether Defendant exercised reasonable care in inspecting the premises and whether Defendant offered sufficient evidence to defeat the inference of negligence imposed by the mode-of-operations rule on the date of the accident. Under New Jersey's mode-of-operations

rule, it is the function of the jury to determine the existence of a dangerous condition and the reasonableness of defendant's care. Hopkins v. Fox & Lazo Realtors, 625 A.2d 1110, 1121 (N.J. 1993); see also O'Shea v. K Mart Corp., 701 A.2d 475, 476 (N.J. Super. Ct. App. Div. 1997) (holding that whether a store used due care was a question of fact for the jury). Here, a reasonable jury could conclude that given the self-service nature of its buffet and the heavy volume of Buffet patrons, Defendant did not exercise reasonable care in attempting to prevent slip-and-fall injuries on the surface where Plaintiff fell. Therefore, Defendant's motion for summary judgment will be denied in part.[2]

**C. Punitive Damages**

Defendant has also moved for summary judgment on Mr. Spitko's claim seeking punitive damages, arguing that "there can be no dispute that Harrah's took steps to remedy spills on the floor" at the Buffet. [Docket Item 49, 13.] Under New Jersey's Punitive Damages Act,

> [p]unitive damages may be awarded to the plaintiff only if the plaintiff proves, by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who

---

[2] Defendant seeks summary judgment as to Mrs. Spitko's loss of consortium claim on the basis that Mr. Spitko's negligence claim fails. [Docket Item 49, 12.] As the Court has denied Defendant's request for summary judgment on Mr. Spitko's negligence claim, the Court will also deny Defendant's request for summary judgment on Mrs. Spitko's loss of consortium claim.

17

> foreseeably might be harmed by those acts or omissions. This burden of proof may not be satisfied by proof of any degree of negligence including gross negligence.

N.J. STAT. ANN. § 2A:15-5.12(a). This statute provides that even gross negligence will not suffice to make punitive damages available. Breeman v. Everingham (In re Paulsboro Derailment Cases), 704 F. App'x 78, 87 (3d Cir. 2017). Additionally, "[p]unitive damages are unavailable . . . where a defendant knows of a potentially hazardous situation and unsuccessfully takes steps to remedy the situation. Id. at 88.

Here, because Mr. Spitko does not assert a claim surpassing gross negligence, punitive damages are unavailable. Mr. Spitko asserts that Defendant exhibited "wanton and willful disregard of persons" because Defendant filed forty-four slip-and-fall incident reports over a two-year period. [Docket Item 48-12 ¶ 126.] Plaintiffs' expert claims that twenty-eight to thirty-seven of these reports documented falls caused by "wet, food or butter substances" on the floor "in and around the Waterfront Buffet." [Id.; 44, ¶ 21.] However, Defendant's disposition of Plaintiffs' expert incited testimony conceding that some of these incident reports documented falls that either did not occur in the Buffet area or had unknown causes. [Penza Dep. 47-8, 41-91.] Therefore, Plaintiffs' estimation does not correctly identify the number of falls that occurred in the Buffet as a result of slippery floors,

18

nor is there any figure for the number of patrons claiming personal injury due to Defendant's negligence.

Additionally, the Buffet serves at least 700,000 patrons per year. [Docket Items 48-13, 37; 49, 14.] Taking the highest number of relevant incident reports identified by Plaintiffs' expert (37) and assuming that all of those incidents occurred in the Buffet, which Defendant denies, and assuming 1,400,000 Buffet patrons in two years, only .00264% of patrons experienced some sort of slip–and-fall incident over the two-year period. This low probability of potential risk does not warrant a claim for punitive damages. This is especially true where there is no data of the number of reported incidents that caused personal injury due to Defendant's negligent maintenance of the Buffet floor.

Defendant also asserts that all Buffet employees are required to monitor and report any spills on the floor. [Docket Item 47-1, ¶ 23.] The Buffet staffs a line wiper and at least one EVS employee to monitor and clean the Buffet floors during the dinner shift [Docket Items 47-1, ¶ 33; 48, 19.] The evidence suggests that no reasonable jury could find, by clear and convincing evidence, that Defendant's acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard for the safety of its Buffet patrons. Therefore, Defendant's alleged negligence falls short of what is required to sustain an award for punitive

damages and the Court will grant Defendant's motion for summary judgment on Mr. Spitko's claim for punitive damages.

## V. CONCLUSION

For the reasons stated above, the Court will deny Defendant's motion for summary judgment as to Defendant's negligence and grant Defendant's motion dismissing Plaintiffs' punitive damages claim. Further Defendant's application to preclude the expert opinions of Plaintiffs' proposed expert Charles Penza pursuant to Daubert and Rule 702, FED. R. EVID., is granted in part and denied in part to the extent set forth in Part IV.A, above. An accompanying Order will be entered.


**March 27, 2019**                         **s/ Jerome B. Simandle**
Date                                       JEROME B. SIMANDLE
                                           U.S. District Judge